# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATAWISSA TOWNSHIP, | No. 4:24-CV-00280 |
| Plaintiff, | Chief Judge Brann |
| v. | |
| MIDLAND ASPHALT MATERIALS, INC. and LIBERTY MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

## MEMORANDUM OPINION

### MAY 14, 2024

## I.    BACKGROUND

On January 11, 2024, Plaintiff, Catawissa Township, filed a five-count complaint against Defendants, Midland Asphalt Materials, Inc. ("Midland") and Liberty Mutual Insurance Company ("Liberty Mutual") in the Court of Common Pleas of Columbia County.[1] Defendants then removed this action on the basis of diversity jurisdiction.[2] Midland and Liberty Mutual each filed a Motion to Dismiss on February 23, 2024 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] These motions are now ripe for disposition. For the reasons that follow, Midland's motion is granted in part and denied in part, and Liberty Mutual's motion is granted.

---

[1]    *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.).
[2]    *See* Doc. 1 (Notice of Removal).
[3]    *See* Doc. 5 (Motion to Dismiss by Midland); Doc. 6 (Motion to Dismiss by Liberty Mutual).

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[8]

---

[4]    550 U.S. 544 (2007).
[5]    556 U.S. 662 (2009).
[6]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[7]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[8]    *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Normally, to consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[9] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[10] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[11] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[12] It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[13] In this matter, this Court finds that these conditions have been met and will consequently consider Pennsylvania Department of Transportation ("PennDOT") Publication 408.

## B.   Facts Alleged in the Complaint

### 1.   The Parties

Catawissa Township is a "Second Class Township in Columbia County, Pennsylvania."[14] Midland is incorporated in New York and maintains its principal

---

9    *See* Fed. R. Civ. P. 12(d).
10   *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).
11   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
12   *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
13   *Faulkner*, 463 F.3d at 134.
14   Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.) ¶ 1.

place of business there.[15] Through a bidding process, the Township selected Midland to perform repair work on McIntyre Road in 2019.[16] Finally, Liberty Mutual is a Massachusetts corporation with a principal place of business in Boston, Massachusetts; it provided the surety bond required by Plaintiff.[17]

## 2. The Proposal

Midland "created a proposal for work to be performed on McIntyre Road for Catawissa Township" on April 12, 2018.[18] To ensure the proper material was supplied, the Proposal required Midland to provide a bill of lading for each load delivered, daily material certifications, oil samples, an affidavit showing aggregate and oil compatibility, and a copy of a PennDOT approved seal coat design.[19] An escalator clause in the Proposal allowed for the price adjustment of bituminous material as needed.[20] Plaintiff was also to receive two weeks' notice before any work began, and all work was to be completed in accordance with PennDOT Publication 408.[21] Finally, the Proposal required Midland to perform full depth reclamation ("FDR") on the road and to test and submit a laboratory design mix to the Township three weeks before commencing the repair work.[22]

---

[15] *See id.* ¶ 2; Doc. 1 (Notice of Removal), Ex. B (Coleman Decl.) ¶ 3.
[16] *See id.* ¶ 8.
[17] *See id.* ¶ 3.
[18] *Id.* ¶ 7.
[19] *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.), Attach. 1 (The Proposal) at 3-e.
[20] *See id.* at 3-f.
[21] *See id.*
[22] *See id.* at 3-3-a.

4

### 3.    The Contract

The Catawissa Township Board of Supervisors approved the Proposal on April 9, 2019 through PennDOT Form MS-944 ("Form MS-944" or "the Contract").[23] Form MS-944 is divided into two parts.[24] Part A describes how to submit proposals.[25] In Part B, the relevant proposal is identified  and followed by a signed contractor's certification.[26] Underneath the signed certification is a page divider that states: "TO BE EXECUTED ONLY IN THE EVENT THE ABOVE PROPOSAL IS ACCEPTED."[27] The municipality then signs and dates the form under this page divider.[28]

### 4.    The Surety Bond

The Contract required Midland to provide a Performance Bond and Payment Bond ("the Bond") "for 100% of the work to Catawissa Township within twenty days … of receipt of the bid award."[29] On April 18, 2019, Midland provided a bond issued by Liberty Mutual for $151,111.07 "to guarantee Midland's compliance and performance of the terms and conditions of the Contract …."[30] The

---

[23]   *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.) ¶ 8.
[24]   *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.), Attach. 2 (Executed Contract) at 52-53.
[25]   *See id.*
[26]   *See id.*
[27]   *Id.*
[28]   *See id.*
[29]   Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.) ¶ 9.
[30]   *Id.*

Bond "irrevocably bound" Liberty Mutual to Catawissa Township "to assure the completion of the work by Midland under the Proposal and Contract."[31]

### 5.      Modifying the Proposal Terms

Pursuant to the escalator clause, "Midland met with Catawissa Township [in June 2019] to seek a modification of the Proposal" as its "emulsion projections prohibited it from performing the project for the full length at the agreed upon price ...."[32] Due to this issue, the parties reduced the amount of work to be performed.[33]

### 6.      Performance Failures

Catawissa Township alleges several breaches of the Proposal. These failures are best divided into the following categories: nonperformance of certain tests or investigations; lack of adequate notice and certifications; and noncompliance with specific performance metrics.

### i.      Nonperformance of Tests and Investigations

Midland did not provide a "laboratory design mix" or perform a Marshall Design Test before work on the road began.[34] Further, it did not "investigate the traffic and water flow on McIntyre and Quarry Roads" nor did it "provide oil

---

[31] *Id.* ¶ 11.
[32] *Id.* ¶ 14.
[33] *See id.*
[34] *Id.* ¶¶ 15-17.

samples ….”[35] And, finally, Midland did not “perform a 300-foot test strip demonstrating the FDR process prior to work being performed ….”[36]

### ii.   Lack of Adequate Notice and Certifications

Midland was supposed to provide two weeks' notice before working on the roads.[37] No such notice was given; instead, Midland “arrived unannounced and began work on McIntyre Road” on June 25, 2019.[38] Additionally, the Township never received the required daily material certifications, a compatibility affidavit, or load tickets.[39]

### iii.   Noncompliance with Performance Metrics

Midland notably did not comply with PennDOT Publication 408 or provide “an approved PennDOT seal coat design ….”[40] These failures contributed to the company's inability to “provide a road surface that lasted more than a few months prior to failure” and “to construct the road in such a way as to avoid premature road failure.”[41]

---

[35] *Id.* ¶¶ 39(d), (h).
[36] *Id.* ¶ 39(k).
[37] *See id.* ¶ 39(l).
[38] *Id.* ¶ 22.
[39] *Id.* ¶¶ 39(f), (g), (i).
[40] *Id.* ¶¶ 39(a), (e).
[41] *Id.* ¶¶ 39(m), (n).

### 7.      Payment and Failure of the Road

Plaintiff "paid Midland in full in two payments on August 2, 2019 and September 6, 2019."[42] In February 2020, Catawissa Township became aware of the road's "failure" and "immediately notified" Midland of this issue.[43] Engineers from the Township and Midland agreed "that the road had failed and required repairs."[44] The road had an emulsion rate of 1.5% to 1.8%.[45] In order to avoid failure, McIntyre Road actually required an emulsion rate of 3% to 4.5%.[46] This prompted Plaintiff to send "a formal notice of the failure of the reclaimed base and roadway surface …."[47]

### C.      Analysis

The Township has filed a five-count complaint against the Defendants. In Counts I through IV, Plaintiff alleges claims against Midland stemming from the failure of McIntyre Road. Count V is a claim for breach of surety contract solely alleged against Liberty Mutual. This is a contractual dispute predicated on this Court's diversity jurisdiction and brought under Pennsylvania law.[48] "In the absence of authoritative guidance from the Supreme Court of Pennsylvania, the Court looks to 'decisions of [Pennsylvania] intermediate appellate courts, of

---

[42]   *Id.* ¶ 24.
[43]   *Id.* ¶ 25.
[44]   *Id.* ¶ 28.
[45]   *Id.* ¶ 30.
[46]   *Id.*
[47]   *Id.* ¶ 31.
[48]   *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L.Ed. 1188 (1938).

federal courts interpreting [Pennsylvania] law, and of other state supreme courts that have addressed the issue ...."[49]

### 1. Count I – Breach of the Contract

Under Pennsylvania law, "'three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[] (3) resultant damages.'"[50] Midland disputes the terms of the contract, Plaintiff's ability to show any breach, and causation.

### i. Terms of the Contract

Midland contends that the Contract does not incorporate the Proposal it had previously submitted to the Township as it is not "clear[ly] reference[d]" in the Contract.[51] This argument fails to recognize the critical issue: whether the Proposal served as an offer that Plaintiff was free to accept.

Courts in Pennsylvania have routinely concluded that "'a solicitation for bid proposals is not an offer but only an invitation for parties to submit bids in response to this request. The submission of the bid is, in fact, the offer which the

---

[49] *First Nonprofit Ins. Co. v. Meenan Oil LLC*, 462 F. Supp. 3d 537, 540 (E.D. Pa. 2020) (quoting *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010)).

[50] *Doe v. Univ. of the Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 137 A.3d 1247, 1258 (Pa. 2016)).

[51] *Fegley Real Estate, LLC v. Boyle Constr., Inc.*, No. 2009-C-4007, 2011 Pa. Dist. & Cnty. Dec. LEXIS 366, at *4 (Lehigh Cnty. Ct. of Common Pleas) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy,* 333 F.3d 440, 447 (3d Cir. 2003)).

contracting agency is free to accept or reject.'"[52] This view is consistent with the discussion of public construction contracts in the Restatement (Second) of Contracts.[53] The structure of Form MS-944 also aligns with the three-steps of forming a contract through an auction process. Part A is the Township's initial request for offers.[54] Part B first memorializes Midland's submission of its offer to Catawissa Township.[55] Then, below the page divider, Plaintiff accepts that offer.[56] Accordingly, I conclude that the Proposal operated as an offer which Plaintiff accepted through Form MS-944; the terms of the Proposal are an appropriate basis for this breach of contract claim.

The course of performance of this contract reinforces this determination. "[T]he Supreme Court of Pennsylvania has recognized that the 'course of performance is always relevant in interpreting a writing.'"[57] "As the [Pennsylvania] Supreme Court explained, '[t]he parties to an agreement know best

---

[52] *Yurcho v. Hazleton Area Sch. Dist.*, No. 1430 C.D. 2011, 2012 Pa. Commw. Unpub. LEXIS 821, at *22-23 (Pa. Commw. Ct. 2012) (quoting *Nat'l Constr. Servs. V. Phila. Reg'l Port Auth.*, 789 A.2d 306, 309 (Pa. Commw. Ct. 2001)).

[53] *See* RESTATEMENT (SECOND) OF CONTRACTS § 28, cmt. c (1981) ("Governmental agencies … often advertise for bids from construction contractors prepared to undertake the building of a building or other structure … The rule in such cases is much like that governing auctions – unless a contrary intention is manifested, the advertisement is not an offer but a request for offers; bidders on both prime contract and subcontract make offers when they submit bids; and all bids may be rejected …."). "Pennsylvania courts regularly employ the Restatement (Second) of Contracts when resolving contract disputes." *Hart v. Arnold*, 2005 PA Super 328, 884 A.2d 316, 333 (Pa. Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (Pa. 2006).

[54] *See* RESTATEMENT (SECOND) OF CONTRACTS § 28, cmt. c (1981).

[55] *See id.*

[56] *See id.*

[57] *Norfolk Southern Ry. v. Pittsburgh & W. Va. R.R.*, 101 F. Supp. 3d 497, 525 (W.D. Pa. 2015) (quoting *Atl. Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 741 n.6 (Pa. 1978)).

what they meant, and their action under it is often the strongest evidence of their meaning.'"[58] The Third Circuit has similarly "observed that '[a] court always may consider the course of performance as evidence of the intent of the parties.'"[59]

Notably, "Midland met with Catawissa Township to seek a modification of the Proposal pursuant to the Escalator Clause" in June 2019. This escalator clause is not mentioned in what Midland asserts is the only operative document: the signed and executed version of Form MS-944. This behavior suggests that the parties did in fact intend to be bound by the terms of the Proposal.

### ii.    Breach of the Terms and Causation

Since I have determined that the terms of the Proposal are binding on Midland for purposes of this motion, Plaintiff has also appropriately identified various breaches of the contract.[60] For this reason, I will now address Midland's causation argument.

"In order to prevail on a breach of contract claim in Pennsylvania, a plaintiff must show not only damages, but also 'a causal connection between the breach and the loss.'"[61] As alleged, Plaintiff contends that "[a]s a direct and proximate result of Midland's material breach of the Contract, [it] has suffered damages in excess of $150,000.00 ...." Other courts in this Circuit have found similar language

---

[58] *Id.*

[59] *Id.* at 526 (quoting *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137-38 (3d Cir. 2008)).

[60] *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.) ¶ 39.

[61] *Enslin v. Coca-Cola Co.*, 739 F. App'x 91, 95 (3d Cir. 2018) (quoting *Logan v. Mirror Printing Co. of Altoona, Pa.*, 410 Pa. Super. 446, 600 A.2d 225, 226 (Pa. Super. Ct. 1991)).

sufficient to allege a causal connection between the relevant breach and damages.[62] This conclusion is supported by the stated purpose of various terms of the Contract: to ensure that the proper materials were used.[63] Despite Midland's suggestion to the contrary, the Township has also adequately shown how the breaches caused its damages. The various alleged breaches contributed to Midland's inability "to provide a road surface that lasted more than a few months prior to failure."[64] That then required Catawissa Township to "remedy the issues caused by Midland's defective performance …."[65]

### 2.    Count II – Breach of Express Warranty

"To sustain a claim for breach of express warranty, a plaintiff must generally establish: '(1) defendants breached or failed to meet its warranty promise, (2) the breach was the proximate cause of the harm, and (3) there were ensuing damages.'"[66] "Where a contract contains an express warranty to remedy defects due to faulty workmanship or materials appearing within the specified time, [that party] is responsible for defects resulting from such causes which appear within the warranty period and is required to make good [its] warranty according to its terms

---

[62]   *See e.g.*, *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434 (E.D. Pa. 2018).
[63]   *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.), Attach. 1 (The Proposal) at 3-e.
[64]   Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.) ¶ 39.
[65]   *Id.* ¶ 34.
[66]   *Dietrick v. Barnett Outdoors, LLC*, No. 3:20-CV-215, 2021 U.S. Dist. LEXIS 188839, 2021 WL 4494631, at *6 (M.D. Pa. Sept. 30, 2021) (Mariani, J.) (quoting *Stevens v. C.R. Bard, Inc.*, No. 17-cv-1388, 2018 U.S. Dist. LEXIS 17536, 2018 WL 692097 (W.D. Pa. 2018)).

….”[67] “In addition, accepting a completed project does not waive imperfections in the construction and workmanship that are inherently latent and could not have been revealed upon reasonable inspection.”[68]

In support of this claim, Plaintiff identified three possible express warranties: Midland's responsibility for maintaining the road for a year as expressed in the Final Completion Certificate;[69] PennDOT Publication 408 Section 105.12;[70] and PennDOT Publication 408 Section 107.16(b).[71]

As to Midland's obligation to repair the road for a year, I note that the Final Completion Certificate is unsigned. Assuming for purposes of this motion, without

---

[67] *Buddy's Plant Plus Corp. v. CentiMark Corp.*, Civil Action No. 10-670 2013 U.S. Dist. LEXIS 6373, 2013 WL 169697, at *31 (W.D. Pa. Jan. 16, 2013), *aff'd* 604 F. App'x 134 (quoting Brandywine *Area Joint Sch. Auth. v. Van Cor, Inc.,* 57 Pa. D. & C.2d 606, 616 (Chester Cnty. Ct. of Common Pleas 1971)).

[68] *Id.* (citing *Abram Singer Sons, Inc. v. DeStefano*, 17 Pa. D. & C.2d 146 (Montgomery Cnty. Ct. of Common Pleas 1971)).

[69] In the Final Completion Certificate, it states "The Contractor is responsible for maintenance of permanent pavement repairs for a period of one year from this date." *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.), Attach. 1 (The Proposal) at 36.

[70] *See* PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, SPECIFICATIONS, PUB 408/2016 (Change 6) § 105.12, *Defective Work and Material* (Apr. 5, 2019) ("If any work and/or material does not meet the requirements of the plans and specifications, or is not within reasonably close conformity, as determined by the Representative, such work and/or material will be declared defective. Unless otherwise specified, repair, as directed, or remove and replace defective work and/or material at no expense to the Department.").

[71] *See id.* at § 107.16(b), *Responsibility for Latent Defects* ("The Representative will determine if a defect is a latent defect. The Contractor and the Surety continue to be liable for all latent defects; however, the Surety is liable only until the performance bond is released. Satisfactorily repair or correct latent defects at no expense to the Department. If defects cannot be satisfactorily repaired or corrected, provide reimbursement for any expenses or damages incurred by the State because of latent defects. Failure to satisfactorily correct latent defects, or to reimburse the State for expenses or damages incurred as a result of latent defects, will be considered sufficient cause to suspend or remove prequalification, according to 67 PA Code Chapter 457, regulations governing prequalification of prospective bidders, provided that any adjudication regarding such latent defects is final.").

deciding that this precludes Plaintiff from relying on it as an express warranty, the Township has nonetheless adequately pled this claim. The Contract explicitly incorporates by reference PennDOT Publication 408. Therefore, Plaintiff has "referred to the warranty … and cited specific examples of" Midland's "failure to construct" and repair the road in accordance with the express warranties.[72] These examples include: the determination of the emulsion rate in May 2020; the failure to provide a PennDOT approved seal coat design; the failure to perform a test strip demonstrating the FDR process; and the failure to provide an approved FDR mix design prior to commencing work on the road.[73]

Midland again challenges Plaintiff's ability to demonstrate causation. It contends that the "Township says only that Midland declined to repair the road or refund its money …."[74] "[R]ather than attempting to 'show' how Midland caused its injury, … the Township simply says that it did so."[75] In making this argument, Midland does not persuasively consider the impact of incorporating Paragraphs 1 through 41 of the Complaint into this cause of action. The deficiencies in materials and processes alleged in those paragraphs contributed to the failure of the road and the latent defect at issue. While this claim may ultimately prove to be duplicative, for now it is appropriate to allow it to proceed.

---

[72] *Roberts v. NVR, Inc.*, Civil Action No. 15-489, 2015 U.S. Dist. LEXIS 76795, 2015 WL 3745178, at *8 (W.D. Pa. June 15, 2015).

[73] *See* Doc. 1 (Notice of Removal), Ex. A (Columbia Cnty. Compl.) ¶¶ 30, 39.

[74] Doc. 9 (Brief in Support of Midland's Motion to Dismiss) at 13.

[75] *Id.*

### 3.    Count III – Breach of Implied Warranty

For a claim for a breach of an implied warranty, the Township must show "'1) the existence of the implied warranty; 2) breach of the implied warranty; 3) a causal connection between the defendant's breach and the plaintiff's injury or damage; and 4) the extent of loss proximately caused by the defendant's breach.'"[76] Both federal and state courts in Pennsylvania have "previously recognized on several occasions that all service contracts—not just residential construction contracts—may include an implied warranty that services will be performed in a reasonable and workmanlike manner."[77]

First, Midland contends that "the Township does not allege how Midland allegedly failed to perform [the] services in a way that breached the implied warranty."[78] In making this argument, Midland does not seriously consider the significance of incorporating the prior allegations into this claim; instead, it dismisses these allegations after a cursory discussion.[79] But these earlier allegations in fact establish "how" the implied warranty of workmanship has been violated: through Midland's allegedly inadequate performance and improper use of

---

[76] *State Farm Fire & Cas. Co. v. Waterbury Kitchen and Bath, Inc.*, No. 22-447, 2023 U.S. Dist. LEXIS 151546, 2023 WL 5538048, at *2 (E.D. Pa. Aug. 25, 2023) (quoting *Byrd v. Essex Silverline Corp.*, No. 04-cv-4827, 2008 WL 81887, at *3 (E.D. Pa. Jan. 8, 2008)) (emphasis removed).

[77] *Delaware, Lackawaxen and Stourbridge R.R. Co. v. Star Trak, Inc.*, No. 3:18-CV-0480, 2018 U.S. Dist. LEXIS 183035, 2018 WL 5296292, at *3 (M.D. Pa. Oct. 25, 2018) (Saporito, Jr. M.J.) (collecting cases).

[78] Doc. 9 (Brief in Support of Midland's Motion to Dismiss) at 14-15.

[79] *See* Doc. 13 (Reply Brief in Support of Midland's Motion to Dismiss) at 7-8.

materials. As with the other causes of action where causation has been challenged, the identified deficiencies allegedly caused the road's failure. Again, this cause of action may ultimately prove to be duplicative. However, at this stage of the proceeding, it is appropriate to allow it to proceed.

### 4.    Count IV – Unjust Enrichment

"To state an unjust enrichment claim, a plaintiff must allege: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value."[80] But unjust enrichment is "inapplicable when the relationship between parties is founded on a written agreement or express contract."[81] When the unjust enrichment claim "concerns conduct outside the scope of the original agreement or contract," a plaintiff is allowed to plead such a claim in the alternative.[82]

Based on my earlier determinations, the terms of the contract fully govern the relationship between Plaintiff and Midland. As a result, dismissal of this claim is appropriate, but I do so without prejudice.

---

[80]   *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 388 (E.D. Pa. 2019) (citing *Mitchell v. Moore*, 1999 PA Super 77, 729 A.2d 1200, 1203 (Pa. Super. 1999)).

[81]   *Id.* (quoting *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985)).

[82]   *Kraus Indus. v. Moore*, Civil Action No. 06-00542, 2007 U.S. Dist. LEXIS 68869, 2007 WL 2744194, at *8 (W.D. Pa. Sept. 18, 2007) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).

### 5.   Count V – Punitive Damages for Breach of Suretyship

Finally, Liberty Mutual seeks dismissal of Plaintiff's demand for punitive damages. Punitive damages are not available under Pennsylvania law when based solely on a breach of contract.[83] Instead, "'[o]nly where the person who breaks a contract also breaches some duty imposed by society will compensatory or punitive damages be imposed against the wrongdoer in order to punish the wrongful act and in order to serve as a deterrent.'"[84] Since no breach of a societal duty has been alleged, dismissal of this claim for punitive damages is appropriate. Dismissal of this request shall be without prejudice solely to allow Plaintiff the opportunity to allege a breach of a societal duty. It is currently futile for the Township to bring a claim under 42 Pa. C.S. § 8371.[85] Should the Pennsylvania Supreme Court eventually disagree with this conclusion, Catawissa Township may file a motion for reconsideration at that time.

## III.   CONCLUSION

For the reasons above, Midland's motion to dismiss is granted in part and denied in part; Liberty Mutual's motion to dismiss is granted.

---

[83]   *See e.g.*, *McShea v. City of Phila.*, 995 A.2d 334, 340 n. 5 (Pa. 2010); *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000).

[84]   *Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284, 299 (M.D. Pa. 2015) (quoting *Daniel Adams Associates v. Rimbach Publishing Inc.*, 287 Pa. Super. 74, 429 A.2d 726, 728 (Pa. Super. 1981)).

[85]   *See East Steel Constructors, Inc. v. Int'l Fid. Ins. Co.*, 2022 PA Super 149, 282 A.3d 827, 965 (Pa Super. Ct. 2022) ("Section 8371 does not apply to suretyships ….").

Plaintiff is granted to leave amend. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[86] But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[87] As such, Plaintiff will be given fourteen days from today's date to file an amended complaint.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[86]  *Shane v. Fauyer*, 213 F.3d 113, 116 (3d Cir. 2000).
[87]  *Id.* (quoting FED. R. CIV. P. 15(a)).